# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**874**

**CA 10-01586**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, GREEN, AND GORSKI, JJ.

---

RICKY D. WEST, ROBERT H. WEST, ROXY G. BUSH,
PAMELA J. JUDD, JODI M. (WHITE) LYNCH,
CHARLES K. WEST, MICHAEL WEST AND JAMIE-SUE
WEST, PLAINTIFFS-RESPONDENTS,

V                                          MEMORANDUM AND ORDER

MARK HOGAN AND ELIZABETH HOGAN,
DEFENDANTS-APPELLANTS.
---------------------------------------------
MARK HOGAN AND ELIZABETH HOGAN, THIRD-PARTY
PLAINTIFFS-APPELLANTS,

V

DAVID VANDEWATER, THIRD-PARTY
DEFENDANT-RESPONDENT.

---

COLUCCI & GALLAHER, P.C., BUFFALO (PAUL G. JOYCE OF COUNSEL), FOR
DEFENDANTS-APPELLANTS AND THIRD-PARTY PLAINTIFFS-APPELLANTS.

SLYE & BURROWS, WATERTOWN (ROBERT J. SLYE OF COUNSEL), FOR THIRD-PARTY
DEFENDANT-RESPONDENT.

CONBOY MCKAY BACHMAN & KENDALL, LLP, WATERTOWN (PETER L. WALTON OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Lewis County (Charles C. Merrell, A.J.), entered April 7, 2010.
The order and judgment, inter alia, determined the title to certain
real property upon a jury verdict.

It is hereby ORDERED that the order and judgment so appealed from
is modified on the law by vacating the award of punitive damages and
as modified the order and judgment is affirmed without costs, and a
new trial is granted on punitive damages only unless plaintiffs,
within 30 days of service of a copy of the order of this Court with
notice of entry, stipulate to reduce the award of punitive damages to
$15,000, in which event the order and judgment is modified accordingly
and as modified the order and judgment is affirmed without costs.

Memorandum:  Plaintiffs commenced this action seeking, inter
alia, a determination that they acquired title to certain property by
adverse possession.  Plaintiffs own lot 8 on Hiawatha Lake I in the

Town of Grieg (Town), and that lot is improved by a camp that was built in approximately 1971. In October 2004 defendants-third-party plaintiffs (defendants) purchased lot 7, which was a vacant lot to the east of lot 8, and they commissioned a survey of the two lots. According to the property line that is depicted in that survey, the east side of plaintiffs' camp on lot 8 encroached on lot 7 by approximately 2½ feet. After purchasing lot 7, Mark Hogan (defendant) began asserting his rights to all of the property to the east of the property line depicted in the survey. Plaintiffs thereafter commissioned their own survey of the two lots and, according to that survey, the property line between lots 7 and 8 was approximately 10 to 12 feet to the east of the property line depicted in defendants' survey. Plaintiffs alleged that they acquired title to the area that fell within the property lines as depicted in the two surveys (hereafter, disputed area).

Supreme Court properly granted that part of plaintiffs' motion for a directed verdict on the issue of adverse possession inasmuch as there was " 'no rational process by which the fact trier could base a finding in favor of the nonmoving party' " (*Bennice v Randall*, 71 AD3d 1454, 1455, quoting *Szczerbiak v Pilat*, 90 NY2d 553, 556). Plaintiffs established by clear and convincing evidence that their possession of the disputed area was "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period . . . [of] at least 10 years" (*Walling v Przybylo*, 7 NY3d 228, 232). In addition, plaintiffs established that the disputed area was "usually cultivated or improved" pursuant to RPAPL 522 former (1), which was in effect when plaintiffs commenced this action. "The type of cultivation or improvement sufficient under the statute will vary with the character, condition, location and potential uses for the property" (*City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118, 122-123, *appeal dismissed* 58 NY2d 824; *see Ray v Beacon Hudson Mtn. Corp.*, 88 NY2d 154, 160). Plaintiffs, whose parents purchased lot 8 in 1983, and other witnesses testified that plaintiffs mowed and raked the disputed area, placed lawn chairs on it, and used it to access the hatchway doors that were installed in 1988 on the east side of the camp that led to the furnace, hot water heater and shower. Plaintiffs built a memorial for their father on the disputed area in 1992, consisting of a plaque fixed to a rock on a raised flower bed with a hand water pump next to it. Plaintiffs also placed a clothesline and their boats on the disputed area, and the septic system for lot 8 was in the middle of that area. Based on those facts, we conclude that plaintiffs usually cultivated or improved the disputed area (*see Hammond v Baker*, 81 AD3d 1288, 1289-1290; *West Middlebury Baptist Church v Koester*, 50 AD3d 1494, 1495).

We reject defendants' contention that plaintiffs failed to establish the required elements of hostility, claim of right or exclusivity. The evidence presented at trial established that plaintiffs and their predecessors used the disputed area exclusively from the time the camp was constructed in 1971 until defendants commissioned the survey in 2004. If all the other elements of adverse possession are established, it is presumed that the use was hostile and under a claim of right (*see DeRosa v DeRosa*, 58 AD3d 794, 796, *lv*

*denied* 12 NY3d 710; *Allen v Mastrianni*, 2 AD3d 1023, 1024; *Parsons v Hollingsworth*, 259 AD2d 1054). "By definition, a claim of right is adverse to the title owner[s] and also in opposition to the rights of the true owner[s]" (*Walling*, 7 NY3d at 232). Plaintiffs established that they and their predecessors used the disputed area openly and notoriously and that they and their predecessors had been in actual, exclusive, and continuous possession of the disputed area since 1971. Thus, a presumption of hostility under a claim of right arose, and defendants failed to rebut that presumption (*see Hammond*, 81 AD3d at 1289). The evidence submitted by defendants regarding events that occurred in 1998 is of no moment inasmuch as plaintiffs had already acquired the property by adverse possession at that time.

We reject defendants' further contention that the court erred in awarding plaintiffs punitive damages. "In order to recover punitive damages for trespass on real property, plaintiffs have the burden of proving that the trespasser acted with actual malice involving an intentional wrongdoing, or that such conduct amounted to a wanton, willful or reckless disregard of plaintiffs' rights" (*Ligo v Gerould*, 244 AD2d 852, 853; *see Litwin v Town of Huntington*, 248 AD2d 361). Although defendants' survey demonstrated that the disputed area was located within lot 7, it is undisputed that defendant thereafter granted plaintiffs permission to "continue to use th[at] portion of [their] camp on [his] property." Moreover, defendant admitted that he had held a lease option on lot 7 since 1996, and thus it would be reasonable to assume that he was aware of the fact that plaintiffs had exercised rights of ownership over the disputed area since that time. Defendant was also aware of the fact that plaintiffs contested his ownership over the disputed property inasmuch as the Town Code Enforcement Officer noted the "ongoing dispute" between the parties in a letter to defendant in August 2005. Despite granting plaintiffs permission to use their camp and knowing that they contested his ownership of the disputed area, defendant erected a fence that abutted plaintiffs' camp and prevented plaintiffs from accessing their cellar through the hatchway doors that were located in the disputed area. Defendant also padlocked those hatchway doors, moved and demolished portions of the memorial to plaintiffs' father and flipped over boats owned by plaintiffs that were stored in the disputed area.

Once the court determined that the property was owned by plaintiffs by reason of adverse possession, defendant was responsible for any damages that he caused to plaintiffs' property by reason of his trespass, and the jury properly awarded plaintiffs compensatory damages. It is undisputed that punitive damages may also be awarded for actions based on real property trespass (*see e.g. Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463, *appeal dismissed* 13 NY3d 904, *lv denied* 14 NY3d 705, *rearg denied* 15 NY3d 746; *Ligo*, 244 AD2d at 853), but we agree with our dissenting colleagues that there does not appear to be any case awarding punitive damages where, as here, the trespass occurred as a result of adverse possession. We note, however, that there is also no case prohibiting the award of punitive damages in such a situation, and we conclude that this is an "exceptional" case where punitive damages are appropriate (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489; *cf. Litwin*, 248 AD2d 361).

We recognize that, at the time defendant committed his malicious acts, he possessed a survey indicating that he owned the disputed area. Nevertheless, defendant was aware that there was a dispute over the property line, and he granted plaintiffs permission to continue to use their camp. Despite those facts, defendant proceeded to destroy plaintiffs' property, including desecrating a memorial, and the evidence strongly suggests that he plugged plaintiffs' vent pipe, rendering their toilet unusable, and entered their cellar to cut and remove the new vent pipe that plaintiffs subsequently installed. Defendant's conduct was intentional, " 'evince[d] a high degree of moral turpitude and demonstrate[d] such wanton dishonesty as to imply a criminal indifference to [his] civil obligations' " (*Ross*, 8 NY3d at 489). At the very least, it was conduct that "amounted to a wanton, willful or reckless disregard of plaintiffs' rights" (*Ligo*, 244 AD2d at 853).

We conclude, however, that the award of $200,000 in punitive damages was "so grossly excessive 'as to show by its very exorbitancy that it was actuated by passion' " (*Nardelli v Stamberg*, 44 NY2d 500, 504). Based on awards in other trespass cases, we conclude that $15,000 is the amount that " 'bears a reasonable relation to the harm done and the flagrancy of the conduct causing it' " (*Western N.Y. Land Conservancy, Inc.*, 66 AD3d at 1464; *see e.g. Vacca v Valerino*, 16 AD3d 1159, 1160; *Ligo*, 244 AD2d at 853). We therefore modify the order and judgment by vacating the award of punitive damages, and we grant a new trial on punitive damages only unless plaintiffs, within 30 days of service of a copy of the order of this Court with notice of entry, stipulate to reduce that award to $15,000, in which event the order and judgment is modified accordingly.

We have considered defendants' remaining contentions and conclude that they are without merit.

All concur except CENTRA and FAHEY, JJ., who dissent in part and vote to modify in accordance with the following Memorandum: We respectfully dissent in part and would modify the order and judgment by vacating the award of punitive damages. Plaintiffs and defendants-third-party plaintiffs (defendants) own adjoining properties on Hiawatha Lake I in the Town of Grieg. Plaintiffs' lot is improved by a camp built in approximately 1971, and defendants' lot is vacant. When defendants purchased their lot in October 2004, they commissioned a survey that established that the east side of the camp owned by plaintiffs encroached on defendants' lot by approximately 2½ feet. According to plaintiffs, they acquired title to the disputed area, which extends between 10 and 12 feet to the east of their camp, by adverse possession. Although Mark Hogan (defendant) began asserting his right to the disputed area shortly after defendants purchased their lot, plaintiffs waited until October 2006 to commence this action seeking, inter alia, a determination that they acquired title to the disputed area by adverse possession.

We disagree with the majority's conclusion that punitive damages are appropriate in this case. "In order to recover punitive damages for trespass on real property, plaintiffs have the burden of proving

that the trespasser acted with actual malice involving an intentional wrongdoing, or that such conduct amounted to a wanton, willful or reckless disregard of plaintiffs' rights" (*Ligo v Gerould*, 244 AD2d 852, 853; *see Litwin v Town of Huntington*, 248 AD2d 361). In our view, this is not an "exceptional" case where punitive damages are appropriate (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489; *see Litwin*, 248 AD2d 361). The survey that defendants commissioned gave defendant a reasonable and factual basis to believe that he owned the disputed area. This is not a case where the trespasser knew that he or she had no ownership claim over the property (*cf. Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463, *appeal dismissed* 13 NY3d 904, *lv denied* 14 NY3d 705, *rearg denied* 15 NY3d 746; *Ligo*, 244 AD2d 852). Notably, once plaintiffs commenced this action and placed defendants on notice that they were asserting title to the disputed area by adverse possession, there were no further incidents of trespass by defendant. We therefore agree with defendants that the award of punitive damages should be vacated.

Entered:  October 7, 2011                    Patricia L. Morgan
                                             Clerk of the Court